## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CALLWAVE COMMUNICATIONS, LLC, | |
| Plaintiff, | |
| v. | Civil Action No. 12-1701-RGA |
| AT&T MOBILITY, LLC, et al., | |
| Defendants. | |
| CALLWAVE COMMUNICATIONS, LLC, | |
| Plaintiff, | |
| v. | Civil Action No. 12-1702-RGA |
| SPRINT NEXTEL CORP., et al., | |
| Defendants. | |
| CALLWAVE COMMUNICATIONS, LLC, | |
| Plaintiff, | |
| v. | Civil Action No. 12-1703-RGA |
| T-MOBILE USA INC., et al., | |
| Defendants. | |
| CALLWAVE COMMUNICATIONS, LLC, | |
| Plaintiff, | |
| v. | Civil Action No. 12-1704-RGA |
| VERIZON SERVICES CORP., et al., | |
| Defendants. | |

CALLWAVE COMMUNICATIONS, LLC,

　　　　　Plaintiff,

v.

AT&T MOBILITY, LLC, et al.,

　　　　　Defendants.

Civil Action No. 12-1788-RGA

## MEMORANDUM OPINION

Edmond D. Johnson, Esq., James G. McMillan, III, Esq., PEPPER HAMILTON, LLP, Wilmington, DE; William D. Belanger, Esq. (argued), Noah V. Malgeri, Esq., Leah R. McCoy, Esq., Christopher Boundy, Esq., Suparna Datta, Esq., PEPPER HAMILTON, LLP, Boston, MA; Gregory S. Bishop, Esq. (argued), PEPPER HAMILTON, LLP, Redwood City, CA.

　　　　　Attorneys for Plaintiff CallWave Communications, LLC.

Jack B. Blumenfeld, Esq., Paul Saindon, Esq., MORRIS, NICHOLS, ARSHT & TUNNELL, Wilmington, DE; James F. Hurst, Esq., George C. Lombardi, Esq. (argued), WINSTON & STRAWN, Chicago, IL; Scott R. Samay, Esq. (argued), Krishnan Padmanabhan, Esq., WINSTON & STRAWN, New York, NY.

　　　　　Attorneys for Defendant Google, Inc.

Arthur G. Connolly, III, Esq., Ryan P. Newell, Esq., CONNOLLY GALLAGHER LLP, Wilmington, DE; Ramsey M. Al-Salam, Esq., Kaustuv M. Das, Esq., PERKINS COIE LLP, Seattle, WA; Kirk R. Ruthenberg, Esq., Mark L. Hogge, Esq., DENTONS US LLP, Washington, DC.

　　　　　Attorneys for Defendant T-Mobile USA, Inc.

Karen Jacobs, Esq., Stephen J. Kraftschik, Esq., Eleanor G. Tennyson, Esq., MORRIS, NICHOLS, ARSHT & TUNNELL, Wilmington, DE; Kirk R. Ruthenberg, Esq., Mark L. Hogge, Esq., DENTONS US LLP, Washington, DC.

　　　　　Attorneys for Defendants Sprint Spectrum L.P., et al.

Collins J. Seitz, Jr., Esq., Benjamin J. Schladweiler, Esq., SEITZ ROSS ARONSTAM & MORITZ LLP, Wilmington, DE; Kevin P. Anderson, Esq., Karin A. Hessler, Esq., Paul M. Kim, Esq., WILEY REIN LLP, Washington, DC.

　　　　　Attorneys for Defendants Verizon Services Corp., et al.

2

Collins J. Seitz, Jr., Esq., Benjamin J. Schladweiler, Esq., SEITZ ROSS ARONSTAM & MORITZ LLP, Wilmington, DE; Joseph P. Zammit, Esq., Daniel S. Leventhal, Esq. (argued), Brett McKean, Esq., FULBRIGHT & JAWORSKI LLP, New York, NY; Mark C. Nelson, Esq., Steven M. Geiszler, Esq., Daniel A. Valenzuela, Esq., DENTONS US LLP, Dallas, TX.

Attorneys for Defendant AT&T Mobility LLC.

Colm F. Connolly, Esq., Jody C. Barillare, Esq., MORGAN, LEWIS & BOCKIUS LLP, Wilmington, DE; Eric Kraeutler, Esq., John V. Gorman, Esq. (argued), Andrew C. Whitney, Esq., Squire J. Servance, Esq., MORGAN, LEWIS & BOCKIUS LLP, Philadelphia, PA.

Attorneys for Defendants Blackberry Corp., et al.

December 17, 2014

ANDREWS, U.S. DISTRICT JUDGE:

Pending before the Court is the issue of claim construction for the disputed terms found in U.S. Patent Nos. 6,771,970 ("the '970 patent") and 7,907,933 ("the '933 patent").

## I. BACKGROUND

On December 12 and 28, 2012, CallWave Communications, LLC ("CallWave") filed these actions for patent infringement against Defendants, alleging infringement of the '970 and '933 patents. (D.I. 1).[1] The Court has considered the parties' joint claim construction brief (D.I. 168), joint appendix (D.I. 170), and oral argument (D.I. 195).

## II. LEGAL STANDARD

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotation marks omitted). "'[T]here is no magic formula or catechism for conducting claim construction.' Instead, the court is free to attach the appropriate weight to appropriate sources 'in light of the statutes and policies that inform patent law.'" *SoftView LLC v. Apple Inc.*, 2013 WL 4758195, at *1 (D. Del. Sept. 4, 2013) (quoting *Phillips*, 415 F.3d at 1324). When construing patent claims, a matter of law, a court considers the literal language of the claim, the patent specification, and the prosecution history. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977–80 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Of these sources, "the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315 (internal quotation marks and citations omitted).

---

[1] All references to docket items use the numbering of the docket in case No. 12-1701.

4

"[T]he words of a claim are generally given their ordinary and customary meaning. . . . [Which is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips*, 415 F.3d at 1312–13 (internal quotation marks and citations omitted). "[T]he ordinary meaning of a claim term is its meaning to [an] ordinary artisan after reading the entire patent." *Id.* at 1321 (internal quotation marks omitted). "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314 (internal citations omitted).

A court may consider extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises," in order to assist the court in understanding the underlying technology, the meaning of terms to one skilled in the art, and how the invention works. *Id.* at 1317–19 (internal quotation marks and citations omitted). Extrinsic evidence, however, is less reliable and less useful in claim construction than the patent and its prosecution history. *Id.*

"A claim construction is persuasive, not because it follows a certain rule, but because it defines terms in the context of the whole patent." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998). It follows that "a claim interpretation that would exclude the inventor's device is rarely the correct interpretation." *Osram GmbH v. Int'l Trade Comm'n*, 505 F.3d 1351, 1358 (Fed. Cir. 2007) (internal quotation marks and citation omitted).

## III. CONSTRUCTION OF DISPUTED TERMS

### A. The '970 Patent

1. "mobile platform"

   a. *CallWave's proposed construction*: No construction is necessary.

   b. *Defendants' proposed construction*: Any mobile entity that can be tracked or have a tracking device installed or attached (including, but not limited to a vehicle, a person, a portable computer, or a mobile telephone).

   c. *Court's construction*: Any mobile entity that can be tracked or have a tracking device installed or attached (for example, a vehicle, a person, a portable computer, or a mobile telephone).

During oral argument, CallWave informed the Court that the parties had agreed to use Defendants' construction for "mobile platform." (D.I. 195 at 7:10–11). CallWave originally proposed this construction as an alternative in the parties' first joint claim construction chart (D.I. 144, Ex. A at 1), and Defendants adopted this construction in the parties' joint claim construction brief. (D.I. 168 at 17). The Court made one amendment to Defendants' construction, changing "including, but not limited to" to "for example," for purposes of clarity. Otherwise, Defendants' construction remains as the parties agreed.

2. "remote tracking system" and "remote tracking service"

   a. *CallWave's proposed construction*: No construction is necessary. If the Court determines construction is necessary: A system [service] for determining the location of one or more mobile platforms.

6

b. *Defendants' proposed construction*: A system physically separate from the mobile platform being tracked that determines and returns the location of the mobile platform.

c. *Court's construction*: A system physically separate from the mobile platform being tracked that determines the location of the mobile platform.

CallWave argues that no construction is necessary for this term, and in the alternative, for "a system [service] for determining the location of one or more mobile platforms." (D.I. 168 at 19). The Federal Circuit has made clear that patent "claims are interpreted with an eye toward giving effect to all terms in the claim," and "physical structures and characteristics specifically described in a claim" should not be interpreted as "merely superfluous." *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006). Here, CallWave's construction reads out the word "remote." CallWave argues that the tracking unit should be interpreted as part of the remote tracking system. (D.I. 195 at 13:18–14:2). The specification, however, does not support this construction. The summary of the invention describes "a system for location tracking of mobile platforms, each mobile platforms [sic] having a tracking unit; the system including . . . a plurality of remote tracking systems." (D.I. 146, Ex. T at 148, 2:2–14). The specification further teaches that the remote tracking systems "determin[e] the location of the remote platform," while "[t]he tracking unit . . . transmits data via a wireless data transmission protocol . . . to the associated location tracking service provider." (*Id.* at 148, 2:15–16 & 149, 3:64–67). The specification uses two distinct terms to describe the tracking units and remote tracking systems, and teaches that the two components serve different functions within the invention. Thus, the tracking units and remote tracking systems must be treated as distinct elements, and "remote" must be given its plain and ordinary meaning in the context of the patent.

7

The Court removed "and return" from Defendants' construction because it places an improper limitation on the claim term. Claim 1 teaches that the remote tracking systems are "adapted to determine the location of a respective mobile platform," and "the appropriate remote tracking system receiving said mobile platform identity . . . and returning mobile platform location information." (*Id.* at 150, 6:60–63 & 151, 7:1–4). Claim 14, on the other hand, teaches only "[a] method of determining the location of mobile platforms . . . locatable by a plurality of remote tracking systems." (*Id.* at 151, 7:57–59). The summary of the invention mirrors claim 1, describing a system that includes "a plurality of remote tracking systems . . . for determining the location of the remote platform," and "the appropriate remote tracking system receiving said mobile platform identity and returning mobile platform location information." (*Id.* at 148, 2:14–16 & 2:20–22). Although claim 1 includes the "appropriate" remote tracking system "returning" the location information of a mobile platform, this limitation does not appear in claim 14. In order to construe remote tracking system in light of the patent as a whole, the construction cannot include a limitation that appears in one claim, but not another. Therefore, the Court removes "and return" from Defendants' construction.

      3.    "a property that is predetermined for each mobile platform"

           a.    *CallWave's proposed construction*: No construction is necessary. If the Court determines construction is necessary: A property of a mobile platform determined before a remote tracking system determines the location of the mobile platform.

           b.    *Defendants' proposed construction*: A property of the mobile platform fixed before the time the mobile platform can first be tracked that is used to determine the remote tracking system by which the mobile platform will be tracked.

c. *Court's construction*: A property of a mobile platform determined before a remote tracking system determines the location of the mobile platform.

During oral argument, the parties agreed that the relevant period for determining the property is when a subscriber makes a search request through the system to locate a mobile platform. (D.I. 195 at 43:13–15). Defendants contend, however, that the predetermined property must be "fixed before the time the mobile platform can first be tracked." Defendants rely on the specification, which teaches that the location determination system "determine[s] the appropriate location tracking system (11–14) for the vehicle." (D.I. 146, Ex. T at 149, 4:41–42). The prosecution history also states that the invention determines "the appropriate remote tracking system for the mobile entity which a user wishes to locate," and "allows multiple remote tracking systems, each operating according to a respective and different protocol, to determine the location of a mobile platform." (*Id.*, Ex. V at 172).

CallWave argues that nothing in the patent or its prosecution history requires the predetermined property to be fixed. (D.I. 168 at 26). CallWave cites to the specification, which teaches a method that includes "determining for each remote platform one of the remote tracking systems that is capable of locating said remote platform." (D.I. 146, Ex. T at 149, 3:11–13). The prosecution history states that "each of the remote tracking systems is adapted to determine the location of a respective remote platform according to a property that is predetermined for each mobile platform." (*Id.*, Ex. V at 173). The specification language implies that multiple remote tracking systems may be "capable" of locating a mobile platform, and nothing in the intrinsic or extrinsic record says that the predetermined property must be "fixed." Defendants' construction adds a limitation that is not supported by the specification or prosecution history, and thus the Court does not include this limitation in its construction.

9

Additionally, Defendants' construction requires that the predetermined property be "used to determine the remote tracking system." The claim language, however, teaches that the remote tracking systems are "adapted to determine the location of a respective mobile platform according to a property that is predetermined for each mobile platform for determining the location of the mobile platform." (*Id.*, Ex. T at 150, 6:62–65). The specification also notes that the remote tracking systems are used for "determining the location of the remote platform." (*Id.* at 148, 2:15–16). It follows that Defendants' limitation is contrary to the claim language and the specification, and the Court does not include it in the term's construction.

4.      "determining [determine] for each mobile platform one of the remote tracking systems that is capable of locating said mobile platform"

                a.      *CallWave's proposed construction*: No construction is necessary.
If the Court determines construction is necessary: Determining [determine] for each mobile platform (as defined) one of the remote tracking systems (as defined) that is capable of locating said mobile platform (as defined).

                b.      *Defendants' proposed construction*: Determining [determine] which one (and only one) of the remote tracking systems is appropriate for use to locate each mobile platform.

                c.      *Court's construction*: No construction is necessary.

The point of contention here is whether the word "one" should be construed as "one (and only one)." (D.I. 195 at 47:8–11). Claim 1 requires the location determination system "to determine an appropriate one of the plurality of remote tracking systems," which contemplates the existence of multiple remote tracking systems capable of locating a mobile platform. (*Id.* at 150, 6:66–151, 7:1). This language is consistent with claim 14, which describes a method that

10

includes "determining for each mobile platform one of the remote tracking systems that is capable of locating said mobile platform." (*Id.* at 151, 7:65–67). The specification teaches that a communication system will "determine an appropriate one of the plurality of remote tracking systems." (*Id.* at 148, 2:17–19). The claims and specification refer to "an appropriate" remote tracking system, rather than "the appropriate" remote tracking system, which suggests that more than one remote tracking system may be capable of locating a mobile platform. Further, the plain and ordinary meaning of the word "one" is contrary to Defendants' construction of "one (and only one)."

Defendants cite language from the prosecution history stating that "the invention allows multiple remote tracking systems, each operating according to a respective and different protocol, to determine the location of a mobile platform and each being selected by the communication system so that only one suitable remote tracking system is employed in a manner that is wholly transparent to the end user." (*Id.*, Ex. V at 172). Defendants rely on the language "only one suitable remote tracking system," but the full sentence reads "so that only one suitable remote tracking system is employed in a manner that is wholly transparent to the end user." Reading the phrase in context does not imply that only one remote tracking system is capable of locating a specific mobile platform. To the contrary, CallWave points to language in the prosecution history that states, "[a prior art reference] . . . discloses that device 12 [(i.e., mobile platform)] includes circuitry standard to GPS locator devices *and* paging/cellular communication devices." (*Id.*, Ex. X at 194). Thus, the prosecution history contemplates the existence of multiple technologies capable of locating a single mobile platform. Therefore, the Court does not impose Defendants' added limitation on the claim term.

11

5. "transmitting [transmit] the location of each mobile platform to said subscriber"

a. *CallWave's proposed construction*: No construction is necessary. If the Court determines construction is necessary: Transmitting [transmit] the location (as defined) of each mobile platform (as defined) to said subscriber (as defined).

b. *Defendants' proposed construction*: Transmitting [transmit] the location of the mobile platform, as received from the remote tracking system, to the subscriber.

c. *Court's construction*: No construction is necessary.

During oral argument, Defendants wanted to "make clear that the location is determined by the 'remote tracking system' and not some other part of the system." (D.I. 195 at 59:4–6). For this reason, Defendants added the language "as received from the remote tracking system." (*Id.* at 59:7–10). The Court finds that Defendants' added limitation causes more confusion than clarity. That the remote tracking system is the thing from which the transmitting occurs is clear from the claim. The term's plain and ordinary meaning would be apparent to a juror. Therefore, no construction is necessary.

6. "subscriber"

a. *CallWave's proposed construction*: No construction is necessary. If the Court determines construction is necessary: User.

b. *Defendants' proposed construction*: A user that can request the location of a plurality of mobile platforms, from which the user is physically separate, through an intermediary location system with which the user is registered.

c. *Court's construction*: A person or company that subscribes to the location determination services.

12

During oral argument, the Court proposed the construction: "A person or company who purchases the location determination services." (D.I. 195 at 9:8–11). CallWave's primary objection to the Court's construction was to the use of the word "purchases." (*Id.* at 60:11–12). CallWave argues that "purchases" is too narrow because the invention contemplates alternative forms of payment, such as advertisement. (*Id.* at 60:19–21). CallWave points to language in claim 4, referring to "free advertising systems" as a source of location information. (D.I. 146, Ex. T at 151, 7:25–29). CallWave also argues that the plain meaning of the word "subscribe" does not require payment, and thus is broader than purchases. (D.I. 195 at 60:13–16). For this reason, CallWave proposed using "subscribes" instead of purchases. (*Id.* at 62:9–11). Defendants, on the other hand, agreed with the use of purchases in the Court's construction. (*Id.* at 62:23–63:1). The Court finds, upon reflection, that CallWave is correct in arguing that "purchases" is narrower than "subscribes," and thus uses the latter in the Court's construction.

7. "plurality of remote tracking systems"

a. *CallWave's proposed construction*: No construction is necessary. If the Court determines construction is necessary: More than one remote tracking systems (as defined).

b. *Defendants' proposed construction*: Multiple remote tracking systems, each supervising a different group of mobile platform[s].

c. *Court's construction*: No construction is necessary.

The Court has already defined remote tracking systems, and thus the only word remaining is "plurality." The Court proposed "two or more" for the construction of plurality (D.I. 195 at 9:12–14), but the parties agree that no construction is necessary for this term. (*Id.* at 72:4–7).

13

8. "map information"

    a. *CallWave's proposed construction*: No construction is necessary.
If the Court determines construction is necessary: Information relating to a map.

    b. *Defendants' proposed construction*: Data which represents a map
image.

    c. *Court's construction*: No construction is necessary.

Defendants argue that map information should be construed as "data which represents a map image." Defendants attempt to redefine "map information" as "map image," which is not supported by the specification or the plain meaning of the words. CallWave cites to the specification, which provides that "[t]he location data received by a subscriber is normally an HTML representation of the information requested . . . [and] may be composed of, for example, HTML and a GIF (image) component." (D.I. 146, Ex. T at 150, 5:19–22). In addition, the specification refers to other types of data that may be transmitted by the map and location data servers such as location, traffic, road names, videos, and Yellow Pages information. (*Id.* at 150, 5:3–10). Thus, the specification contemplates different types of map information—not just images. Recognizing that "map information" is a broad concept, the Court nevertheless finds no reason to limit it. Therefore, the Court will not construe it, as a jury can understand its meaning.

## B. The '933 Patent

The parties agree that claim 13 is the only asserted independent claim in the '933 patent, and the only claim containing disputed terms. (D.I. 195 at 78:6–9).

1. "information . . . related to a user's purchase request" and "the purchase request information"

14

a.   *CallWave's proposed construction*: No construction is necessary. If the Court determines construction is necessary: Information related to a user's request to purchase, lease, or license a good or service.

b.   *Defendants' proposed construction*: Information . . . specific to a request made to purchase, lease, or license a selected good or service.

c.   *Court's construction*: Information related to a user's request to purchase, lease, or license a selected good or service.

During oral argument, the parties agreed, or nearly agreed, to the Court's construction. (D.I. 195 at 94:17–95:5). There is no dispute over the meaning of the word "purchase" in the term because the patentee defines "purchase" to include "a lease or licensing of a good or service." (D.I. 145, Ex. A at 15, 3:34–35). The only point of contention is whether the word "selected" should be included before "good or service." (D.I. 195 at 93:23–94:3). Defendants argue that "selected" should be included because "purchase request information" should relate only to the request to buy a good or service, and should not include account information provided by the purchaser when signing up for the service. (*Id.* at 87:15–18). CallWave, on the other hand, argues that "selected" should not be included because the specification provides that "[t]he message can include information related to the purchase price and an [Automatic Number Identification] associated with a phone line of the user." (D.I. 145, Ex. A at 14, 2:4–6). Additionally, the specification provides that the message can include "an account identifier, such as a phone number, user identifier, password, or other identifier," and "the amount of the charge, whether the charge is recurring, . . . and the like." (*Id.* at 15, 4:3–9).

CallWave argues that adding "selected" places an unnecessary limitation on the claim language because the information accompanying the message, as disclosed in the specification,

15

may not be related to a "selected good or service." The Court, however, finds that including "selected" before "good or service" indicates that a purchase is actually taking place, and thus better reflects the meaning of the claim term. The exact demarcation between "related" and "unrelated" information is a question of applying the Court's construction to the facts, and is a matter for trial. Therefore, the Court includes "selected" in the final construction.

2. "causing at least in part an electronic communication to be originated from a mobile device"

a. *CallWave's proposed construction*: No construction is necessary. If the Court determines construction is necessary: At least partly causing an electronic transmission to be transmitted from a mobile device.

b. *Defendants' proposed construction*: Transmitting instructions to a mobile device that results in origination of an electronic communication from a mobile device.

c. *Court's construction*: No construction is necessary.

The term "electronic communication" is defined in the section below. The remaining words of the term are ordinary English words, and may be given their plain and ordinary meaning. Defendants' proposed construction is narrower than that contemplated by the specification, and reads out the phrase "at least in part." Therefore, the Court finds that no construction is necessary.

3. "electronic communication"

a. *CallWave's proposed construction*: No construction is necessary. If the Court determines construction is necessary: An electronic transmission of information or instructions.

b. *Defendants' proposed construction*: A telephone call.

16

c. *Court's construction*: A telephone call.

The issue here is whether "electronic communication" should be construed to be limited to only a telephone call. CallWave argues that no construction is necessary because the "words are plain English words that any juror would readily understand." (D.I. 195 at 97:7–8). Claim 13 teaches that the purchase request causes an "electronic communication to be originated from a mobile device," which in light of the specification appears to be referring to a telephone call. (D.I. 145, Ex. A at 18, 10:16–18). CallWave highlights that claim 1 refers specifically to "a call," while claim 13 refers to an "electronic communication." (D.I. 168 at 70). Thus, CallWave argues that "call" explicitly refers to a telephone call, while "electronic communication" includes other forms of communication.

Defendants argue that claim differentiation does not save CallWave's construction in light of the specification and prosecution history. "Any presumption created by the doctrine of claim differentiation will be overcome by a contrary construction dictated by the written description or prosecution history." *Retractable Techs., Inc. v. Becton, Dickinson and Co.*, 653 F.3d 1296, 1305 (Fed. Cir. 2011). In addition, "[w]hen a patent . . . describes the features of the 'present invention' as a whole, this description limits the scope of the invention." *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1308 (Fed. Cir. 2007). "While clear language characterizing 'the present invention' may limit the ordinary meaning of claim terms, such language must be read in context of the entire specification and the prosecution history." *Rambus Inc. v. Infineon Techs. Ag*, 318 F.3d 1081, 1094 (Fed. Cir. 2003). Here, Defendants argue that the specification narrows the scope of the invention by stating that "[t]he present invention is related to systems and methods for routing and placing telephone calls." (D.I. 145, Ex. A at 14, 1:39–40). Defendants also argue that the prosecution history shows that the patent

17

examiner understood the invention to operate by "causing a call to be placed from a mobile device." (D.I. 146, Ex. S at 139).

CallWave argues that the specification contemplates methods of electronic communication other than just telephone calls. In support of this proposition, CallWave cites a passage that refers to signaling methods (*e.g.*, ISDN, Advanced Intelligent Network ("AIN"), and MF Inband Signaling), which are used to pass signal information along with a telephone call. (D.I. 145, Ex. A at 15, 4:53–61). CallWave relies on the statement that "the invention is not limited to these methods and contemplates other methods in which [Automatic Number Identification] or similar signaling information can be passed." (*Id.* at 15, 4:59–61). This language, however, refers only to methods for transmitting signal information in conjunction with a telephone call. The preferred embodiment further explains that "the call manager system delivers, over a signaling channel . . . information identifying the origin of the call through a service known as Automatic Number Identification (ANI), or using other types of signaling information." (*Id.* at 15, 4:36–40). Thus, the specification makes clear that ANI and other signaling channels are not distinct forms of electronic communication, but rather different methods for passing signaling information. In light of the written description and prosecution history, the scope of the invention is limited to telephone calls. Therefore, the Court construes the term "electronic communication" accordingly.

    4. "over at least one network"

     a. *CallWave's proposed construction*: No construction is necessary. If the Court determines construction is necessary: Over one or more networks.

     b. *Defendants' proposed construction*: Over the network or networks that interconnect the mobile device to the first destination.

18

c. *Court's construction*: No construction is necessary.

Defendants argue that the term "over at least one network" should be construed as "over the network or networks that interconnect the mobile device to the first destination." Defendants rely on the dictionary definition of the word "over" to argue that "the claim refers to the entire electronic communication path, from one end (origin) to the other (endpoint)." (D.I. 168 at 77). CallWave argues that Defendants' proposed construction changes the claim language from "over at least one network" to "over the entire electronic communication path." (*Id.* at 78). CallWave notes that the specification "refers only to an origin, a destination and at least one network," and makes no reference to an "electronic communication path." (*Id.*). Further, CallWave argues that the usage of "over" in the claim language and specification "is in complete accord with common English usage." (*Id.* at 79). The specification teaches that "the call manager system . . . originates a call over trunk connection 22 to the Public Switched Telephone Network 20 to a '900', '976' or other pay-per-call number." (D.I. 145, Ex. A at 15, 4:9–13). Thus, "the specification uses the word 'over' to refer to a single network (trunk connection 22)," and not the entire electronic communication path. (D.I. 168 at 79). The Court does not see support for Defendants' proposed limitation, which is the equivalent of, "over all networks in the chain from the mobile device to the first destination." The Court finds that the words in the term, including "over," are ordinary English words that take on their plain and ordinary meaning. Therefore, no construction is necessary.

5. "first destination"

a. *CallWave's proposed construction*: No construction is necessary.

If the Court determines construction is necessary: A place to which the electronic communication is going.

19

b.     *Defendants' proposed construction*: A pay-per-call number or service.

c.     *Court's construction*: A pay-per-call number or service.

Having defined "electronic communication" as a telephone call, the Court defines the first destination of that call as "a pay-per-call number or service." The specification teaches that "embodiments of the present invention provide apparatus and methods for a system connected to the PSTN to place an authorized call to a pay-per-call number such as a 900 or 976 number, or the like, on behalf of a user to purchase a good or service." (D.I. 145, Ex. A at 14, 1:45–49). Further, the specification teaches that "[t]he call manager system . . . calls a pay-per-call service via the call service phone line using the user ANI." (*Id.* at 14, 2:8–10). The specification consistently refers to communications as "telephone calls" or "calls," and thus the patentee makes clear that the invention is limited to electronic communication in the form of telephone calls. The prosecution history also informs the construction of "first destination," teaching that "the user is billed for the purchase request partly in response to the call placed to the pay-per-call service as substantially described in independent claims 1 and 13." (D.I. 146, Ex. S at 139). Therefore, the specification and prosecution history demonstrate that the claimed invention contemplated a pay-per-call number or service as the first destination of the electronic communication. Thus, the Court construes the claim as such.

6.     "the user is billed for a purchase price associated with the purchase request at least partly in response to the communication"

a.     *CallWave's proposed construction*: No construction is necessary. If the Court determines construction is necessary: The communication at least partly causes the user to be billed for a purchase price associated with the purchase request.

20

b. *Defendants' proposed construction*: The user is billed for a purchase price associated with the purchase request in response to the electronic communication, and not subsequent communications, from the mobile device.

c. *Court's construction*: No construction is necessary.

The term uses ordinary English words, which may be given their plain and ordinary meaning. Defendants' construction includes "and not subsequent communications," which places an additional limitation on the claim language that is not supported by the specification. A juror would not have trouble understanding the meaning of this term, and thus no construction is necessary.

7. "causing at least in part a charge for the purchase to be billed via a phone bill"

a. *CallWave's proposed construction*: No construction is necessary. If the Court determines construction is necessary: Having some effect upon a charge for the purchase to be billed via a phone bill.

b. *Defendants' proposed construction*: Billing the charge for the user's purchase to the user's phone bill.

c. *Court's construction*: No construction is necessary.

The term uses ordinary English words, which may be given their plain and ordinary meaning. Defendants' construction transforms "causing" into "billing," which is not supported by the specification. CallWave's alternative construction includes "having some effect upon a charge," which is broader than the claim language permits. Therefore, the Court does not adopt either construction, and applies the term's plain and ordinary meaning.

21

# IV. CONCLUSION

Within five days the parties shall submit a proposed order consistent with this Memorandum Opinion suitable for submission to the jury.