IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CALLWAVE COMMUNICATIONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>AT&T MOBILITY, LLC, et al.,<br><br>Defendants. | Civil Action No. 12-1701-RGA |
| CALLWAVE COMMUNICATIONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SPRINT SPECTRUM L.P., et al.,<br><br>Defendants. | Civil Action No. 12-1702-RGA |
| CALLWAVE COMMUNICATIONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>VERIZON SERVICES CORP., et al.,<br><br>Defendants. | Civil Action No. 12-1704-RGA |
| BROADSOFT, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CALLWAVE COMMUNICATIONS, LLC,<br><br>Defendant. | Civil Action No. 13-711-RGA |

# MEMORANDUM OPINION

Edmond D. Johnson, Esq., James G. McMillan, III, Esq., PEPPER HAMILTON LLP, Wilmington, DE; William D. Belanger, Esq. (argued), Noah V. Malgeri, Esq., Leah R. McCoy, Esq., Christopher Boundy, Esq., Suparna Datta, Esq., L. Andrew Tseng, Esq., PEPPER HAMILTON LLP, Boston, MA; Gregory S. Bishop, Esq. (argued), Charles F. Koch, Esq., PEPPER HAMILTON LLP, Redwood City, CA.

    Attorneys for Plaintiff CallWave Communications, LLC.

Jack B. Blumenfeld, Esq., Paul Saindon, Esq., MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE; Scott R. Samay, Esq. (argued), Howard I. Shin, Esq., Krishnan Padmanabhan, Esq. (argued), WINSTON & STRAWN LLP, New York, NY.

    Attorneys for Defendant Google, Inc.

Karen Jacobs, Esq., Stephen J. Kraftschik, Esq., Eleanor G. Tennyson, Esq., MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE.

    Attorneys for Defendants Sprint Spectrum L.P., et al.

Benjamin J. Schladweiler, Esq., SEITZ ROSS ARONSTAM & MORITZ LLP, Wilmington, DE; Robert J. Scheffel, Esq., WILEY REIN LLP, Washington, DC.

    Attorneys for Defendants Verizon Services Corp., et al.

John G. Day, Esq., Tiffany Geyer Lydon, Esq., Andrew C. Mayo, Esq., ASHBY & GEDDES, Wilmington, DE; Peter Yi, Esq., COOLEY LLP, Reston, VA.

    Attorneys for Broadsoft, Inc.

June 3, 2015

**ANDREWS, U.S. DISTRICT JUDGE:**

Pending before the Court is the issue of claim construction for the disputed terms found in U.S. Patent Nos. 7,397,910 ("the '910 patent"); 7,555,110 ("the '110 patent"); 7,636,428 ("the '428 patent"); 7,822,188 ("the '188 patent"); 8,064,588 ("the '588 patent"); 8,325,901 ("the '901 patent"); and 8,351,591 ("the '591 patent") (collectively, the "Call Processing Patents").

## I. BACKGROUND

CallWave Communications, LLC ("CallWave") filed the instant actions for patent infringement against Defendants on December 12, 2012. (D.I. 1).[1] Broadsoft, Inc. ("Broadsoft") filed an action for declaratory judgment against CallWave on April 23, 2013. (C.A. No. 13-711, D.I. 1). The Court has considered the parties joint claim construction brief (D.I. 216), joint appendix (D.I. 217), and oral argument. (D.I. 254). The parties also filed subsequent letters addressing issues raised at oral argument. (D.I. 243, 245–48 & 253).

## II. LEGAL STANDARD

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotation marks omitted). "'[T]here is no magic formula or catechism for conducting claim construction.' Instead, the court is free to attach the appropriate weight to appropriate sources 'in light of the statutes and policies that inform patent law.'" *SoftView LLC v. Apple Inc.*, 2013 WL 4758195, at *1 (D. Del. Sept. 4, 2013) (quoting *Phillips*, 415 F.3d at 1324). When construing patent claims, a court considers the literal language of the claim, the patent specification, and the prosecution history. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977–80 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370

---

[1] All references to docket items, unless otherwise indicated, use the numbering of the docket in Case No. 12-1701.

(1996). Of these sources, "the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315 (internal quotation marks and citations omitted).

"[T]he words of a claim are generally given their ordinary and customary meaning. . . . [Which is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1312–13 (internal quotation marks and citations omitted). "[T]he ordinary meaning of a claim term is its meaning to [an] ordinary artisan after reading the entire patent." *Id.* at 1321 (internal quotation marks omitted). "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314 (internal citations omitted).

When a court relies solely upon the intrinsic evidence—the patent claims, the specification, and the prosecution history—the court's construction is a determination of law. *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015). The court may also make factual findings based upon consideration of extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Phillips*, 415 F.3d at 1317–19 (internal quotation marks and citations omitted). Extrinsic evidence may assist the court in understanding the underlying technology, the meaning of terms to one skilled in the art, and how the invention works. *Id.* Extrinsic evidence, however, is less reliable and less useful in claim construction than the patent and its prosecution history. *Id.*

2

"A claim construction is persuasive, not because it follows a certain rule, but because it defines terms in the context of the whole patent." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998). It follows that "a claim interpretation that would exclude the inventor's device is rarely the correct interpretation." *Osram GmbH v. Int'l Trade Comm'n*, 505 F.3d 1351, 1358 (Fed. Cir. 2007) (internal quotation marks and citation omitted).

## III. CONSTRUCTION OF DISPUTED TERMS

1. "call"

   a. *Plaintiff's proposed construction:*[2] No construction is necessary. If the Court determines construction is necessary: Connection or request for connection.

   b. *Defendants' proposed construction*: A voice path and associated signaling information.

   c. *Court's construction*: Telephone call.

CallWave argues that no construction is necessary because the term "call" is readily understood to mean "a phone call." (D.I. 216 at 18). During oral argument, CallWave agreed that "telephone call" was a "perfectly appropriate" construction of the term "call." (D.I. 254 at 11:1–5). Defendants note in their briefing that "[t]he asserted patents are expressly directed toward call processing systems and consistently use the term 'call' in the sense of a phone call." (D.I. 216 at 15). Defendants, however, argue that a "call" requires both a voice path and signaling. (D.I. 254 at 23:2–4). I disagree. The '188 patent specification provides that "[t]he present invention relates generally to telecommunications, and more particularly to telephone call processing." (D.I. 171-2 at 47, 2:7–8). Common usage of the term "call" does

---

[2] The Court notes that Plaintiff proposed two alternatives for each of the fourteen terms. This makes Plaintiff's claim construction briefing substantially outside of the norm. *Cf.* 35 U.S.C. § 285 (exceptional case).

3

not require a voice path and signaling, as one can place a call without establishing a connection with the intended call recipient. Thus, Defendants' proposed construction is not consistent with the plain and ordinary meaning of the term, and is narrower than the claims and specification envision. Therefore, the Court construes the term as "telephone call."

    2.    "outcall from the call processing system" and "outcall"

        a.    *Plaintiff's proposed construction*: No construction is necessary. If the Court determines construction is necessary: Outgoing call.

        b.    *Defendants' proposed construction*: A call originated from the call processing system.

        c.    *Court's construction*: An outgoing call from the call processing system.

Defendants argue that the usage of "outcall" in the claims of the '188 patent makes clear that it must be "originated from the call processing system." (D.I. 216 at 23). CallWave objects to the use of the word "originated" (D.I. 254 at 45:3–13), arguing that it may exclude embodiments disclosed in the specification. (*Id.* at 46:1–13). CallWave also argues that Defendants' proposed construction would render the language "from a call processing system" in claim 1 of the '188 patent superfluous. (D.I. 216 at 25). The Court recognizes that certain claims refer to an "outcall from the call processing system," but other claims do not. Defendants, in turn, propose to construe "outcall" uniformly throughout the patent as originating from the call processing system. (D.I. 254 at 21:4–14). Where the claims use the word "outcall," alone, the term has an antecedent basis in the term "outcall from the call processing system." To make this clear, I have construed the term "outcall" to mean "an outgoing call

4

from the call processing system." In instances where "outcall" is followed by "from the call processing system," the term "outcall" is construed as "an outgoing call."

CallWave also points out that the specifications of the '188 and '591 patents refer to "outcalls placed by the subscriber." (D.I. 243; 171-2 at 73, 53:5 & 171-3 at 1, 52:67).[3] Defendants note, however, that the full sentence cited by CallWave states that "[t]he transfer and conferencing call management functions are optionally made available by the system on inbound calls to the subscriber and on outcalls placed by the subscriber." (D.I. 171-2 at 73, 53:2–5). Defendants highlight the passage immediately preceding this sentence, which makes clear that the sentence relates to an embodiment of the patent involving a virtual telephone number (VTN): "As similarly described herein, optionally, a single phone number (e.g., a VTN) associated with a subscriber can be used to reach communication devices (e.g., a mobile phone, a work fixed, landline phone, a home fixed, landline phone, a VoIP phone, etc.) associated with different lines and/or carriers." (*Id.* at 72, 52:59–63). Defendants also point to earlier passages describing the same embodiment, explaining that "when a call is placed to the VTN, the call is optionally connected to the call processing system. The call can then be connected by the call processing system to the user (e.g., by placing an outcall to a terminal associated with the user and bridging the incoming call and the out call)." (*Id.* at 72, 52:24–28). The context of the sentence cited by CallWave makes clear that a call placed by the subscriber must go through the call processing system, and thus the actual "outcall" still comes from the call processing system. The Court is unaware of any other instances where the term "outcall" is used to describe anything but a call

---

3 Defendants note that the '591 patent is a continuation of the '188 patent, and has an identical specification. (D.I. 246 at 1 n.1). Thus, Defendants argue that these references constitute one example, rather than two. (*Id.*).

5

coming from the call processing system. Therefore, the term "outcall" is construed as "an outgoing call from the call processing system."

3. "placing/place a[n] [first/new/second/third] [out]call" and "outcall is placed" and "outcall is to be placed"

    a. *Plaintiff's proposed construction*: No construction is necessary. If the Court determines construction is necessary: Requesting a[n] [first/second/third] outcall (as defined) and outcall (as defined) is requested.

    b. *Defendants' proposed construction*: Originating a request for a [first/new/second/third] call or outcall.

    c. *Court's construction*: No construction is necessary.

The only point of dispute is whether "placing" means "requesting" or "originating a request." (D.I. 216 at 26). Defendants' use of "originating" adds a limitation to the claim language that is not supported by the intrinsic record, and "requesting" does not clarify the meaning of the term "placing." There is no reason not to give "placing" its plain and ordinary meaning. "Placing" is an ordinary word that a juror would have no trouble understanding. Therefore, no construction is necessary.

4. "switched network"

    a. *Plaintiff's proposed construction*: No construction is necessary. If the Court determines construction is necessary: Communication network with switches, for example, a packet switched network and/or a circuit switched network.

    b. *Defendants' proposed construction*: Circuit switched network.

    c. *Court's construction*: Communication network with switches, for example, a packet switched network and/or a circuit switched network.

6

The term "switched network" appears in claims 10 and 16 of the '428 patent. (D.I. 171-2 at 2, 20:47 & 3, 21:7). Both parties agree that "a network" provides the antecedent basis for "the switched network," and that "network" and "switched network" should be construed the same. (D.I. 247 & 248). The only dispute is whether the term "switched network" should be restricted to a "circuit switched network." (D.I. 216 at 31).

Defendants argue that a person of ordinary skill in the art, as of May 20, 2002, the effective filing date of the '428 patent, would understand "switched network" to mean a "circuit switched network." (D.I. 254 at 71:6–16). Defendants rely on the 2000 edition of *Newton's Telecom Dictionary* for support, which defines "switched network" with a cross-reference to the definition for "PSTN" (public switched telephone network). (D.I. 247-1 at 5–6). CallWave's expert, Dr. David Lucantoni, recognizes that "PSTN is a circuit switched network, which is one type of switched network." (D.I. 217-3 at 51 ¶ 18). CallWave argues, however, that the claim language in the '428 patent precludes "switched network" from being construed as solely a "circuit switched network." (D.I. 216 at 30). CallWave relies on claim 12 of the '428 patent, which is dependent on claim 10, and states that "the called party communicates with the caller using Voice over Internet Protocol (VoIP)." (D.I. 171-2 at 2, 20:51–53). The '428 specification makes clear that "VoIP communicates information via packet switching," rather than circuit switching. (D.I. 171-1 at 99, 7:15–16). The '428 specification also states that "the [Call Management] subsystem 108 is coupled into the PSTN 104 through voice trunk circuits 118 directly interfacing with the Inter Exchange Carrier's (IXC) circuit switched or packet switched telephony network." (*Id.* at 98, 6:12–15). Thus, the '428 claims and specification contemplate the use of both circuit and packet switched networks as the "switched network."

7

Defendants argue that the patentee disclaimed call screening over a packet switched network during the application process, citing the Examiner Interview Summary Record for the '601 patent application.⁴ (D.I. 216 at 31–32). The patent examiner notes that the '601 application overcomes Norris, a prior art reference, because "Norris does not disclose call screening over a POTS [plain old telephone service] or wireless device via a switched network," but rather "Norris uses the packet switched network." (D.I. 171-3 at 17). CallWave points to the patentee's response to a June 17, 2004 office action, where the patentee explains that "Norris appears directed to providing a call waiting alert to a subscriber whose telephone line is busy because a data terminal is accessing the Internet and is not concerned with providing caller identification information to wireless or POTs telephones." (*Id.* at 33). The patentee further notes that with regard to claim 1, "Norris does not even discuss providing a caller phone number for a forwarded call to either or both a wireless phone or a Caller ID enabled POTs phone, or any type of POTs phone." (*Id.* at 34). In the section entitled "Results of Interview," the patentee explains that "[a]greement was reached that [Norris] does not disclose and is not directed to call screening via a switched network, using a POTs device, or using a wireless device." (*Id.* at 32).

CallWave notes that claim 1 references two distinct calls, explaining that the patentee amended claim 1 to require the "second call" to be directed to "at least one of a POTS telephone or a wireless phone." (*Id.* at 23). Similarly, the patentee amended claim 7 of the '601 application to require the "new call" to be directed to "at least one of a POTS terminal or a wireless telephone." (*Id.* at 25). CallWave argues that the patentee added limitations requiring the "second call" and "new call" to be directed to a POTS or wireless phone, but did

---

4 The '601 patent application gave rise to U.S. Patent No. 7,103,167 ("the '167 patent"). (D.I. 171-1 at 87). The '428 patent is a continuation of the '167 patent. (*Id.*).

8

not add such limitations to the "first call." (D.I. 216 at 34). CallWave maintains that "the language that was added by amendment, was describ[ing] the network to which the call processing system was sending the call." (D.I. 254 at 81:17–19). CallWave further argues that the added limitation would have been "superfluous" if the patentee intended "switched network" to mean "circuit switched network." (D.I. 216 at 34). CallWave argues that the only disclaimer occurred where the patentee specifically amended the claim language to include the term "POTS network." (D.I. 254 at 82:22–25). The Court also notes that the amendment added the possibility of the second call being directed to a wireless telephone, which Defendants admit is not restricted to a circuit switched network. (*Id.* at 75:6–11). Thus, I find that the '428 claims and specification contemplate the use of both circuit and packet switched networks for the "switched network," and that the patentee did not disclaim the use of packet switched networks during the application process. Therefore, I adopt CallWave's proposed construction.

     5.     "bridging the . . . [out]call and the . . . [out]call" and "causing . . . to be bridged"

     a.     *Plaintiff's proposed construction*: No construction is necessary. If the Court determines construction is necessary: Joining the . . . [out]call and the . . . [out]call and Causing . . . to be joined.

     b.     *Defendants' proposed construction*: Joining the respective voice paths and signaling information of the first call and the second call [or outcall].

     c.     *Court's construction*: Joining the . . . [out]call and the . . . [out]call and Causing . . . to be joined.

The only dispute between the parties is over the constructions of the terms "call" and "outcall," both of which have already been construed above. (D.I. 216 at 37). The parties

9

agree that "bridging[ed]" means "joining[ed]." (*Id.*). Therefore, I adopt CallWave's proposed construction.

      6.    "forward[ed]"

          a.    *Plaintiff's proposed construction*: No construction is necessary. If the Court determines construction is necessary: Redirect[ed].

          b.    *Defendants' proposed construction*: Redirecting a call directed for a first destination to a second destination based on a predefined rule.

          c.    *Court's construction*: Redirect[ed].

The parties agree that "forwarding" a call involves "redirecting" the call, but disagree over additional limitations. During oral argument, CallWave argued that the primary dispute is whether redirecting the call must be "based on a pre-defined rule." (D.I. 254 at 84:23–25). Defendants, however, conceded that "based on a predefined rule" was "probably not essential" to their construction. (*Id.* at 94:8–12). Defendants contend that another important issue is that a "forwarded" call must be redirected "from a first destination to a second destination." (*Id.* at 92:2–4). Redirecting, by definition, involves directing something from one place to another, and thus this limitation is unnecessary.

Defendants argue that "forwarding" a call and "transferring" a call are distinct concepts. (*Id.* at 91:23–92:6). Defendants argue that a call is "forwarded" according to a condition set by the called party before the call is answered, and a call is "transferred" by the called party after the call has been answered. (*Id.* at 92:5–6, 11–14 & 21). Claim 3 of the '188 patent supports Defendants' definition of "forward," stating that "the first call is forwarded to the call processing system on at least one of a call forward or ring-no-answer condition, a call-forward-all calls condition, or of a forward-on-busy condition." (D.I. 171-2 at 82, 72:41–44). The first option

10

is referred to as the "call forward" or "ring-no-answer" condition, and all three conditions involve only unanswered calls.

CallWave, on the other hand, argues that the patents use "forward" and "transfer" interchangeably. (D.I. 216 at 47). CallWave cites the '110 specification, which states: "[t]he called party can optionally forward the call back to their cell phone or to another phone/phone line during the call with the called party by pressing an appropriate phone key, such as the '2' key." (D.I. 171-1 at 71, 29:8–11). CallWave argues that Defendants' proposed construction would exclude this disclosed embodiment because it occurs during the call and is not based on a predefined rule. (D.I. 216 at 42). CallWave also cites claims 10 and 16 of the '428 patent, which refer to "receiving an instruction from the called party to forward the caller to a second terminal." (D.I. 171-2 at 2, 20:44–45 & 3, 21:4–5). Here, the claims refer to an "instruction" provided by the called party after receiving the call, rather than a predefined rule. Thus, the patents at times use the term "forward" in the same manner as Defendants would use the term "transfer." Therefore, I adopt "redirect" as the construction for both terms.[5]

   7.  "transfer[ring]"

     a.  *Plaintiff's proposed construction*: No construction is necessary. If the Court determines construction is necessary: Redirect[ed].

---

[5] While I adopt the same construction for "forward" and "transfer," I note that there are reasonable arguments for both sides. In my opinion, Defendants are right that the usual understanding of "forward" in the context of telephones is a rule-based event, while "transfer" is not so limited, and, indeed, usually is a human-initiated event. Nevertheless, while some claims use the terms in these senses (*e.g.*, '188 patent, cls. 3 & 14), others do not. (*E.g.*, '428 patent, cls. 10 & 16). Defendants argue that claims 10 and 16 of the '428 patent can be read to use "forward" in the rule-based event sense, but I do not think this makes much sense, as the whole point of the invention is for the call recipient to see who the incoming caller is, so that the call recipient can decide what to do with the call. I also would note that in at least some of the claims, the constructions of "forward" and "transfer" are going to be further restricted by other limitations in the claims.

11

b.  *Defendants' proposed construction*: Moving a call from a first device to a second device identified by the user of the first device.

c.  *Court's construction*: Redirect[ing].

As discussed above, the term "transfer" means to "redirect" a call. Defendants argue that the call must be accepted prior to transferring, relying on claim 19 of the '110 patent, which recites: "providing at least the following call handling options to the called party: accept the call on the first communication device; transfer the call to a first alternate destination." (D.I. 171-1 at 82, 51:25–28). This language, however, does not support the premise that the call must be accepted in order for the called party to "transfer" the call. Rather, the claim provides a list of "call handling options," and "accepting" the call and "transferring" the call are two distinct options on that list. Claim 21, which is dependent on claim 19, further recites: "providing the user the option to transfer the call without screening." (*Id.* at 82, 51:37–38). This language indicates that the call may be transferred without being answered. Although Defendants use the term "device" in their proposed construction, they argue in the briefing that "[t]he term 'transfer' as used in the [Call Processing] Patents refers to moving a call from a first destination to another specified destination." (D.I. 216 at 49). As stated above, the term "redirect" implies directing something from one place to another. Thus, it is unnecessary to include Defendants' additional limitation. Therefore, "transfer[ring]" is construed as "redirect[ing]."

8.  "call handling"

a.  *Plaintiff's proposed construction*: No construction is necessary. If the Court determines construction is necessary: Call management.

b.  *Defendants' proposed construction*: Handling of an incoming call attempt before establishment of a two-way voice communication.

12

c.   *Court's construction*: No construction is necessary.

CallWave argues that the specification of the '110 patent refers to figure 18 as a "call handling options dialog box," and also refers to "call handling options" as "call management options."  (D.I. 171-1 at 63, 14:2–3 & 67, 21:1–2).  I find that "call management" is broader than the term "call handling," and does not clarify the term's meaning.  Defendants, on the other hand, argue that "call handling options" must be presented at the time the called party is screening the call.  (D.I. 254 at 102:5–8).  CallWave argues that the '110 specification discloses numerous examples of call handling taking place after the establishment of a two-way voice communication.  (D.I. 216 at 54).  For example, the '110 specification provides that "the called party can provide the instruction to connect the call to another phone before initiating the conversation with the caller, such as while screening the call, or during the conversation with the caller, such as after accepting the initial call bridged to the called party by the call processing system."  (D.I. 171-1 at 69, 25:33–38).  Thus, Defendants' added limitation is not supported by the intrinsic record.  Additionally, Defendants' proposed construction uses the word "handling" to construe itself, which is not particularly helpful for purposes of construction.  I find that the plain and ordinary meaning of "call handling" is clear, and that a juror would not have trouble understanding this term.  Therefore, no construction is necessary.

9.   "call redirection instruction"

a.   *Plaintiff's proposed construction*: No construction is necessary. If the Court determines construction is necessary: Instruction to redirect a call.

b.   *Defendants' proposed construction*: An instruction to move a call from a first device to a second device identified by the user of the first device during the call screening process.

13

c. *Court's construction*: No construction is necessary.

The parties agreed during oral argument that "call redirection" involves directing a call from one place to another. (D.I. 254 at 109:7–10 & 110:23–25). Defendants' proposed construction, however, requires the instruction "to move a call from a first device to a second device," and the second device must be "identified by the user of the first device during the call screening process." Neither of these limitations is supported by the claims or the specification. CallWave's proposed construction merely rearranges the words of the term, and thus is unhelpful. The term is made of ordinary words that a juror would have no trouble understanding. Therefore, the term will be given its plain and ordinary meaning.

10. "causing the first entity call to be selectively connected to one of a plurality of potential second entity terminal destinations"

    a. *Plaintiff's proposed construction*: No construction is necessary. If the Court determines construction is necessary: Causing the first entity call to be selectively connected, at least partly in response to the received instruction, to one of a plurality of terminal destinations associated with the second entity.

    b. *Defendants' proposed construction*: Causing a connection to the one of a plurality of potential terminals selected by the second entity.

    c. *Court's construction*: Causing the first entity call to be connected to a selected one of a plurality of potential second entity terminal destinations.

In its briefing, CallWave agreed to amend its proposed construction based on Defendants' objections, resulting in the following: "Causing the first entity call to be connected to a selected one of a plurality of potential second entity terminal destinations." (D.I. 216 at 67). During oral argument, the parties tentatively agreed to CallWave's amended construction.

14

(D.I. 254 at 113:1–7). I gave Defendants the opportunity to review the amended construction, and send a letter saying whether they accept it. (*Id.* at 113:17–20). Defendant Google filed a letter stating that it agreed to CallWave's revised proposal. (D.I. 245). Therefore, I adopt CallWave's amended proposed construction.

    11.    "subscriber specified rule" and "subscriber instruction"

        a.    *Plaintiff's proposed construction*: No construction is necessary. If the Court determines construction is necessary: A rule or instruction specified by a subscriber.

        b.    *Defendants' proposed construction*: A phone service subscriber's specified call handling rule, stored in the call processing system's database.

        c.    *Court's construction*: No construction is necessary.

These terms are made of ordinary words that a juror would have no trouble understanding. Defendants propose a limitation not required by the intrinsic record. Therefore, no construction is necessary.

    12.    "[a/the] network"

        a.    *Plaintiff's proposed construction*: No construction is necessary. If the Court determines construction is necessary: [A/The] communication network.

        b.    *Defendants' proposed construction*: Circuit switched network.

        c.    *Court's construction*: Communication network with switches, for example, a packet switched network and/or a circuit switched network.

The parties agree that "network" and "switched network" should be construed the same. (D.I. 247 at 2 & 248 at 1). The Court has already addressed Defendants' argument that the patentee of the '167 patent disclaimed the use of packet switched networks in the section on "switched network." The Court agrees with CallWave that "switched network" and "network"

15

are not limited to circuit switched networks. Therefore, I adopt the same construction for "[a/the] network" as for "switched network."

    13. "call processing system"

      a. *Plaintiff's proposed construction*: No construction is necessary. If the Court determines construction is necessary: A system for processing a call or information relating to a call.

      b. *Defendants' proposed construction*: A system having a central server that answers an incoming call and serves as the interface between the PSTN and the Internet.

      c. *Court's construction*: A system having one or more servers that is capable of screening incoming phone calls.

The parties agree that it is "clear that the central processing system may comprise multiple servers." (D.I. 216 at 80). Thus, Defendants' use of "central server" in its proposed construction creates ambiguity. Additionally, Defendants' proposed construction requires the "call processing system" to serve as "the interface between the PSTN and the Internet," which is a limitation imported from a preferred embodiment that would exclude disclosed embodiments. (*Id.* at 78–79). CallWave's proposed construction is too broad, and does not clarify the term's meaning. Therefore, I construe "call processing system" to mean "a system having one or more servers that is capable of screening incoming phone calls."

    14. "substantially real time"

      a. *Plaintiff's proposed construction*: No construction is necessary. If the Court determines construction is necessary: "almost real time."

16

b.      *Defendants' proposed construction*: Transmitting speech data almost simultaneously as that data is being recorded.

                c.      *Court's construction*: No construction is necessary.

CallWave argues that the patentees in the '428 and '588 patents acted as lexicographer, providing that "[w]ith streaming, a client application executing on the called party's computer can start playing the transmitted speech data in substantially or almost real-time." (D.I. 171-1 at 96, 2:37–40 & 171-2 at 98, 2:37–40). I find the distinction between "substantially" and "almost" to be unhelpful for purposes of construction. Defendants argue that the actual dispute is over the meaning of "real time." (D.I. 254 at 122:14–17). Defendants argue that in order for the transmission of speech to be in "substantially real time" the speech must be recorded before being transmitted. (*Id.* at 124:8–11). This, however, is not supported by the claims, a majority of which do not require recording. The term is made of ordinary words that a juror would have no trouble understanding. Therefore, no construction is necessary.

## IV.    CONCLUSION

Within five days the parties shall submit a proposed order consistent with this Memorandum Opinion suitable for submission to the jury.