IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CALLWAVE COMMUNICATIONS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> AT&T MOBILITY, LCC and GOOGLE INC., <br><br> Defendants. | Civil Action No. 12-1701-RGA |
| CALLWAVE COMMUNICATIONS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> VERIZON SERVICES CORP., CELLCO PARNTERSHIP d/b/a VERIZON WIRELESS and GOOGLE INC., <br><br> Defendants. | Civil Action No. 12-1704-RGA |
| CALLWAVE COMMUNICATIONS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> AT&T MOBILITY, LLC, BLACKBERRY LTD. and BLACKBERRY CORP., <br><br> Defendants. | Civil Action No. 12-1788-RGA |

MEMORANDUM OPINION

Edward D. Johnson, Esq., James G. McMillan, III, Esq., PEPPER HAMILTON LLP, Wilmington, DE; William D. Belanger, Esq., Noah V. Malgeri, Esq., Suparna Datta, Esq., Christopher M. Boundy, Esq., Leah R. McCoy, Esq., L. Andrew Tseng, Esq., PEPPER HAMILTON LLP, Boston,

MA; Gregory S. Bishop, Esq., Charles F. Koch, Esq., PEPPER HAMILTON LLP, Redwood City, CA.

Attorneys for Plaintiff Callwave Communications LLC.

Jack B. Blumenfeld, Esq., Paul Saindon, Esq., MORRIS NICHOLS ARSHT & TUNNELL LLP, Wilmington, DE; Mark C. Scarsi, Esq., Philip Chen, Esq., Ashlee N. Lin, Esq., Dan Nguyen, Esq., MILBANK, TWEED, HADLEY & MCCLOY LLP, Los Angeles, CA; Christopher J. Gaspar, Esq., Nathaniel Browand, Esq., MILBANK, TWEED, HADLEY & MCCLOY LLP, New York, NY.

Attorneys for Defendant Google, Inc.

Benjamin J. Schladweiler, Esq., ROSS ARONSTAM & MORITZ LLP, Wilmington, DE; Edward A. Pennington, Esq., Sid V. Pandit, Esq., Stephanie D. Scruggs, Esq, SMITH, GAMBRELL & RUSSELL, LLP, Washington, D.C.

Attorneys for Defendants Verizon Services Corp. and Cellco Partnership d/b/a Verizon Wireless.

Colm F. Connolly, Esq., Jody C. Barillare, Esq.; MORGAN, LEWIS & BOCKIUS LLP, Wilmington, DE; Eric Kraeutler, Esq., John V. Gorman, Esq., Andrew C. Whitney, Esq., Squire J. Servance, Esq., MORGAN, LEWIS & BOCKIUS LLP, Philadelphia, PA.

Attorneys for Defendants Blackberry Corp. and Blackberry Ltd.

September 15, 2016

*[signature]*
ANDREWS, U.S. DISTRICT JUDGE:

Presently before the Court in these related cases are the Defendants' renewed motions for judgment on the pleadings that the asserted claims of the '970 patent are invalid under § 101. (C.A. No. 12-1701-RGA, D.I. 439; C.A. No. 12-1704-RGA, D.I. 419; CA. No. 12-1788-RGA, D.I. 249).[1] The motions have been fully briefed. (D.I. 440, 452, 462). The Court held oral argument on March 16, 2016. (D.I. 532). For the reasons that follow, the Court will grant Defendants' § 101 motions.

## I. BACKGROUND

Plaintiff filed this patent infringement lawsuit asserting eight different patents against the above-captioned Defendants on December 12, 2012. (D.I. 1). The Court divided the cases into three tracks, including one track that only involves U.S. Patent No. 6,711,970 ("the '970 patent"). (D.I. 57 at 3–4). Certain Defendants previously filed a motion for judgment on the pleadings that the asserted claims of the '970 patent were invalid. (D.I. 257). However, on March 18, 2015, the Court stayed the '970 patent track after the PTAB instituted *inter partes review* on all claims of the '970 patent. (D.I. 342 at 2–3). That same day, the Court also dismissed the Defendants' motion for judgment on the pleadings as to the '970 patent, with leave to renew upon the expiration of the stay of the '970 track. (D.I. 343). The Court lifted the stay on October 7, 2015. (D.I. 424). Defendants then filed renewed motions for judgment on the pleadings, alleging that all remaining asserted claims of the '970 patent are invalid under § 101.

The '970 patent, entitled "Location Determination System," is directed to various systems and methods of determining the location of "mobile platforms." The specification explains that various existing location tracking service providers "collect[s] data using different

---

[1] Unless otherwise specifically noted, all references to the docket refer to Civil Action No. 12-1701.

3

technologies and store[s] this data in its own proprietary format," "result[ing] in confusion for customers who need to consider the various advantages, disadvantages, and cost implications associated with each of the various location systems offered by service providers." ('970 patent, col. 1, ll. 38–50). The '970 patent purports to "simplify the process by allowing inter alia extraction of information from multiple tracking service providers" and "obviate[e] the need to install and use a cumbersome vehicle tracking software." (*Id.* col. 1, ll. 61–67). Plaintiff asserts claims 14–17, and 19, which are directed to methods of determining the location of "mobile platforms" and various computer-based systems for performing the claimed methods.

## II. LEGAL STANDARDS

### A. Motion for Judgment on the Pleadings

A Rule 12(c) motion for judgment on the pleadings is reviewed under the same standard as a Rule 12(b)(6) motion to dismiss when the Rule 12(c) motion alleges that the plaintiff failed to state a claim upon which relief can be granted. *See Turbe v. Gov't of the Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991); *Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010). The court must accept the factual allegations in the complaint and take them in the light most favorable to the non-moving party. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002). "When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The court must "draw on its judicial experience and common sense" to make the determination whether plaintiff failed to state a claim upon which relief can be granted. *See Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 416 n.3 (3d Cir. 1988).

4

## B. Patent-Eligible Subject Matter

Section 101 of the Patent Act defines patent-eligible subject matter. It provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court has recognized an implicit exception for three categories of subject matter not eligible for patentability—laws of nature, natural phenomena, and abstract ideas. *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014). The purpose of these carve outs is to protect the "basic tools of scientific and technological work." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012). "[A] process is not unpatentable simply because it contains a law of nature or a mathematical algorithm," as "an application of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection." *Id.* at 1293-94 (internal quotation marks and emphasis omitted). In order "to transform an unpatentable law of nature into a patent-eligible application of such a law, one must do more than simply state the law of nature while adding the words 'apply it.'" *Id.* at 1294 (emphasis omitted).

The Supreme Court recently reaffirmed the framework laid out in *Mayo* "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 134 S. Ct. at 2355. First, the court must determine whether the claims are drawn to a patent-ineligible concept. *Id.* If the answer is yes, the court must look to "the elements of the claim both individually and as an 'ordered combination'" to see if there is an "'inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to

5

significantly more than a patent upon the [ineligible concept] itself.'" *Id.* (alteration in original). "A claim that recites an abstract idea must include 'additional features' to ensure 'that the [claim] is more than a drafting effort designed to monopolize the [abstract idea].'" *Id.* at 2357 (alterations in original) (quoting *Mayo*, 132 S. Ct. at 1297). "[S]imply appending conventional steps, specified at a high level of generality, to . . . abstract ideas cannot make those . . . ideas patentable." *Mayo*, 132 S. Ct. at 1300. Further, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Alice*, 134 S. Ct. at 2358 (quoting *Bilski v. Kappos*, 561 U.S. 593, 610-11 (2010)). Thus, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.* For this second step, the machine-or-transformation test can be a "useful clue," although it is not determinative. *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014), *cert. denied*, 135 S. Ct. 2907 (2015).

Patent eligibility under § 101 is a question of law suitable for resolution on a motion for judgment on the pleadings. *See OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1346 (Fed. Cir. 2014), *cert. denied*, 136 S. Ct. 119 (2015). The Federal Circuit follows regional circuit law for motions to dismiss. *Content Extraction*, 776 F.3d at 1346. When reviewing a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), this Court must accept the complaint's factual allegations as true. *See Erickson*, 551 U.S. at 94; *Christopher*, 536 U.S. at 406.

The Federal Circuit has held that the district court is not required to individually address claims not asserted or identified by the non-moving party, so long as the court identifies a

representative claim and "all the claims are substantially similar and linked to the same abstract idea." *Content Extraction*, 776 F.3d at 1348 (internal quotation marks omitted).

## III. DISCUSSION

Plaintiff asserts claims 14–17, and 19 of the '970 patent. Claim 14, a method claim, is the focus of the parties' arguments and reads as follows:

> 14. A method of determining the location of mobile platforms, said mobile platforms between them being locatable by a plurality of remote tracking systems, each which is adapted to determine the location of a respective mobile platform according to a property that is predetermined for each mobile platform, the method comprising:
>
> (a) accepting inputs from a subscriber identifying one or more mobile platforms to be located;
>
> (b) determining for each mobile platform one of the remote tracking systems that is capable of locating said mobile platform;
>
> (c) communicating the identity of the one or more mobile platforms to be located to the determined remote tracking system(s);
>
> (d) receiving the location of each mobile platform from the respective remote tracking system; and
>
> (e) transmitting the location of each mobile platform to said subscriber.

('970 patent, claim 14). The additional asserted claims—claims 15–17, and 19—are directed to the same method or systems for performing the same method, but add limitations requiring various computer components and/or that the location information be displayed on a map. (*See id.*, claims 15–17, 19).

### A. *Mayo/Alice* Step One: Abstract Idea

"First, we determine whether the claims at issue are directed to [an abstract idea]." *Alice*, 134 S. Ct. at 2355. "The 'abstract ideas' category embodies 'the longstanding rule that an idea of itself is not patentable.'" *Id.* (internal quotation marks omitted) (quoting *Gottschalk v.*

7

*Benson*, 409 U.S. 63, 67 (1972)). "The Supreme Court has not established a definitive rule to determine what constitutes an 'abstract idea' sufficient to satisfy the first step of the *Mayo/Alice* inquiry." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016). The Supreme Court has recognized, however, that "fundamental economic practice[s]," *Bilski*, 561 U.S. at 611, "method[s] of organizing human activity," *Alice*, 134 S. Ct. at 2356, and mathematical algorithms, *Benson*, 409 U.S. at 64, are abstract ideas. In navigating the parameters of such categories, courts have generally sought to "compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish*, 822 F.3d at 1334. "But in determining whether the claims are directed to an abstract idea, we must be careful to avoid oversimplifying the claims because '[a]t some level, all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016) (alterations in original) (quoting *Alice*, 134 S. Ct. at 2354).

Defendants argue that the asserted claims of the '970 patent claim the abstract idea of "relaying location-related information through an intermediary." (D.I. 440 at 13). Defendants emphasize that the specification states that location tracking systems were well known in the art before the patent and that the only novelty added to the prior art is providing an intermediary capable of communicating with multiple remote tracking systems. (*Id.* at 14). Defendants further contend that the claims are written so broadly that they could be performed entirely by humans. (*Id.* at 16–17). Plaintiff argues that Defendants are improperly going beyond the pleadings with their motion by suggesting that the technology described in the '970 patent was well known at the time of filing. (D.I. 452 at 13). Plaintiffs contend that Defendants describe the invention far too broadly, arguing that the claims of the '970 patent instead "describe[] a

8

specific technologic problem that arises in the context of complex location tracking systems, then claims a specific solution to that problem." (*Id.* at 14). Plaintiff asserts that Defendants ignore that the patent solves the specific problems "arising from employing multiple location tracking systems, each with a different and proprietary software, data and communication formations, and each having 'various advantages, disadvantages and cost implications.'" (D.I. 452 at 15 (quoting '970 patent, col. 1, ll. 21–67)). Plaintiff also maintains that Defendants' arguments improperly ignore the claims' "structural requirement" that the remote tracking systems be specially adapted "to determine the location of a respective mobile platform according to a property that is predetermined for each mobile platform." (*Id.* at 16 (quoting '970 patent, col. 7, ll. 57–62)). Plaintiff also emphasizes that the PTO confirmed during reexamination of the '970 patent that the "according to a property that is predetermined for each platform" claim language was not disclosed by the prior art. (*Id.* at 17).

"Under step one of *Mayo/Alice*, the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Internet Patents*, 790 F.3d at 1346. Here, the claims are directed to the abstract idea of relaying location information via an intermediary. For example, the method of independent claim 14 is directed to a basic series of communications: a subscriber requests location information for a specific tangible object from the intermediary, the intermediary determines which remote tracking system can answer that request and communicates that request to that system, the remote tracking system responds with the location of the object, and the intermediary forwards that response to the subscriber that made the initial request. ('955 patent, claim 14). While claim 14 arguably requires one or two concrete, tangible components—such as "mobile platforms" or "remote tracking systems"—much like in *TLI Commc'ns*, "the specification makes clear that the recited

9

physical components merely provide a generic environment in which to carry out the abstract idea." *TLI Commc'ns*, 823 F.3d at 611. Specifically, the specification explains that a mobile platform is essentially any tangible object. ('970 patent, col. 2, ll. 64–67 ("A mobile platform may be a vehicle, person, a portable computer, a mobile telephone or any other mobile entity that can be tracked or have a tracking device installed or attached.")). Likewise, the specification explains that various remote tracking systems were well known in the prior art and certainly eschews any suggestion that the patentee invented such systems.[2] (*Id.* col. 1, ll. 10–22). These components thus provide a generic, well-known environment in which to carry out the claimed abstract idea. *See TLI Commc'ns*, 823 F.3d at 611.

Requesting and receiving location information is an abstract idea, and adding a vaguely defined intermediary that selectively forwards requests and returns responses does not make the underlying abstract idea any more concrete. Indeed, Courts have routinely found that similar claims are directed to abstract ideas. *See, e.g.*, *Content Extraction*, 776 F.3d at 1347 (claims directed to collecting, recognizing, and storing data were found abstract); *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 Fed. Cir. 2012) ("Dealertrack's claimed process in its simplest form includes three steps: receiving data from one source (step A), selectively forwarding the data (step B, performed according to step D), and forwarding reply data to the first source (step C). The claim 'explain[s] the basic concept' of processing information through a clearinghouse . . . ." (quoting *Bilski*, 130 S. Ct. at 3231)); *Wireless Media Innovations, LLC v. Maher Terminals, LLC*, 100 F. Supp. 3d 405, 408–09, 413 (D.N.J. 2015); *Concaten, Inc. v. Ameritrak Fleet Solutions, LLC*, 131 F. Supp. 3d 1166, 1172 (D. Colo. 2015). For example, in *Concaten*, the

---

[2] In pointing this out, Defendants are not improperly looking outside of the pleadings as Plaintiff suggests. The fact that remote tracking systems were not novel is pointed out clearly by the specification of the '970 patent. The patent simply claims a method for communicating with the multiple different remote tracking systems out there on the marketplace.

10

claims at issue were directed toward a method of communicating the location of snow maintenance vehicles to a server over a wireless network, processing the information to provide both a map displaying such location and an instruction for the vehicle operator, and sending the map and instruction over the wireless network back to the vehicles. *See Concaten*, 131 F. Supp. 3d at 1170. The Court held that these claims were an abstract idea "drawn to the concept of receiving, processing, and transmitting data." *Id.* at 1174. Likewise, in *Wireless Media*, the claims were directed to systems and methods for monitoring and recording container location and load status at a container-receiving facility. *See Wireless Media*, 100 F. Supp. 3d at 408–09. The court held that the claims were "directed to the same abstract idea: monitoring locations, movement, and load status of shipping containers within a container receiving yard, and storing, reporting and communicating this information in various forms through generic computer functions." *Id.* at 413. The claims involved *Concaten* and *Wireless Media* were related to providing location information within specific environments, but courts still found the claims invalid. The asserted claims here are considerably broader. Claim 14 simply recites basic steps involved in requesting and receiving location information through an intermediary.

In *Enfish*, the Federal Circuit recently clarified that a relevant inquiry at *Alice* step one is "to ask whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea . . . ." *Enfish*, 822 F.3d at 1335. It explained that courts should seek to distinguish between claims that are "directed to an improvement in the functioning of a computer" versus "simply adding conventional computer components to well-known business practices." *Id.* at 1338. The Federal Circuit found that the claims at issue in *Enfish* were not directed to an abstract idea because the claims outlined a "specific asserted improvement in

11

computer capabilities . . ., [rather than] a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Id.* at 1336.

Unlike in *Enfish,* the claims here do not describe an improvement in any sort of technology. While Plaintiff purports to suggest that the asserted claims solve a specific, technological problem, the claims simply describe a vague method of relaying location information via an intermediary. In arguing that the claims are not directed to an abstract idea, Plaintiff repeats ad nauseum two specific claim limitations as being purportedly "structural" adaptations that solve the problem addressed by the patent. (D.I. 452 at 14–18). However, these limitations—"adapted to determine the location of a respective mobile platform according to a property that is predetermined for each mobile platform" and "determining for each mobile platform one of the remote tracking systems that is capable of locating said mobile platform"— do not describe a technological breakthrough or improvement. (*Id.*). While the specification states that these elements solve the technological problem presented by the patent (*See, e.g.,* '970 patent, col. 6, ll. 19–25), it is silent as to what these vague statements mean in any sort of technological sense, and altogether fails to describe in any specificity how these claim elements actually solve the problem. Indeed, a full reading of the asserted claims and the specification fails to reveal any sort of tangible technological advance beyond a mere abstract idea implemented using various existing technological tools.

I therefore conclude that the claims are directed to the abstract idea of relaying location information via an intermediary.

### B. *Mayo/Alice* Step Two: Inventive Concept

The determination that a patent is directed to an abstract idea "does not render the subject matter ineligible." *Internet Patents*, 790 F.3d at 1346. Having decided that the patent's claims

12

are directed to an abstract idea, the Court must next "determine whether the claims do significantly more than simply describe the abstract method." *Ultramercial*, 772 F.3d at 715. Since "a known idea, or one that is routine and conventional, is not inventive in patent terms," this analysis "favors inquiries analogous to those undertaken for determination of patentable invention." *Internet Patents*, 790 F.3d at 1346. Indeed, the Federal Circuit has noted that the two stages of the *Alice* two-step inquiry "are plainly related" and "involve overlapping scrutiny of the content of the claims . . . ." *Elec. Power Grp.*, 2016 WL 4073318, *3. Furthermore, neither "[a] simple instruction to apply an abstract idea on a computer," nor "claiming the improved speed or efficiency inherent with applying the abstract idea on a computer" satisfies the requirement of an "inventive concept." *Intellectual Ventures*, 792 F.3d at 1367.

Defendants argue, "The elements of claim 14, both individually and as a whole, contain no inventive concept to take the claim beyond anything more than a series of basic steps to relay information to and from a tracking system." (D.I. 440 at 21). Defendants further assert, "Even assuming that the steps of claim 14 require more sophistication than just one human speaking to another, and are therefore performed by a computer, 'the function performed by the computer at each step of the process is [p]urely conventional.' (*Id.* (quoting *Alice*, 134 S. Ct. at 2359)). Citing *DDR Holdings, LLC v. Hotels.com*, 773 F.3d 1245 (Fed. Cir. 2014), Plaintiff argues that because the asserted claims are narrowly tailored to the specific technological context of electronic-based location tracking systems, they do not preempt the broad idea of relaying location-related information through an intermediary. (D.I. 452 at 22). Plaintiff further contends that the claims require more than generic computer implementation because, "The systems must be specially configured and operated in a manner to allow the system to determine location in conjunction with the specially adapted remote tracking system and the claimed limitations." (*Id.*

13

at 24). After once more repeating the language of the claims, Plaintiff argues that the combination of elements creates a new and useful process, as evidence by the fact that the PTO granted the patent in the first place and allowed the claims after reexamination. (*Id.* at 250).

I conclude that independent claim 14 is devoid of any "inventive concept, sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 134 S. Ct. at 2357. The only claim elements that describe something even arguably more than just basic steps of requesting location information and responding with the requested information, are the two limitations that state "adapted to determine the location of a respective mobile platform according to a property that is predetermined for each mobile platform" and "determining for each mobile platform one of the remote tracking systems that is capable of locating said mobile platform." ('970 patent, claim 14). Without purporting to construe the terms, it appears from the specification that these two similar claim limitations are simply directed to looking at a database to figure out what location tracking service is physically capable of locating a particular mobile platform or type of mobile platform. (*See, e.g., id.* col. 4, ll. 13–16; *id.* col. 4, ll. 39–42). This vague notion of determining what tracking system can locate a specific mobile platform by looking at a database, whether based on technology or any other factor, does not add anything of substance to the claims. In its brief, Plaintiff merely parrots this vague claim language repeatedly. Plaintiff neither suggests that claim construction for these terms is appropriate, nor gives any sort of explanation as to how these steps are performed from a technological point of view. The Court's independent review of the specification likewise does not reveal these steps being described in any sort of technological sense. The Federal Circuit has recently clarified that such functional, result-oriented claims are a hallmark of claims commonly found invalid under § 101. *See Elec. Power Grp.*, 2016 WL 4073318, at *6 ("Indeed, the essentially result-focused,

14

functional character of claim language has been a frequent feature of claims held ineligible under § 101, especially in the area of using generic computer and network technology to carry out economic transactions."); *TLI Commc'ns*, 823 F.3d at 615 ("While these units purport to add additional functionality to the server, the specification limits its discussion of these components to abstract functional descriptions devoid of technical explanation as to how to implement the invention. . . . Such vague, functional descriptions of server components are insufficient to transform the abstract idea into a patent-eligible invention."). Accordingly, I find that the claims of the '970 patent are "so result-focused, so functional, as to effectively cover any solution to [the] identified problem." *Elec. Power Grp.*, 2016 WL 4073318, at *6.

Moreover, Plaintiff's effort to argue that the claims are narrowly tailored to the specific technological context of electronic-based location tracking systems is unavailing. As an initial matter, while the specification discusses various remote tracking technologies that are known in the art, such as GPS, it does not actually purport to define or limit the term "remote tracking system" to electronic-based systems. In any event, even assuming for purposes of argument that the claims of the '970 patent are so limited as to require that "electronic-based remote tracking systems" are used, it is well-settled that a patentee cannot manufacture an inventive concept by claiming an abstract idea but limiting it to a specific technological environment. *See, e.g., Alice*, 134 S. Ct. at 2358 ("[T]he prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." (quoting *Bilski*, 561 U.S. at 610–11); *Intellectual Ventures*, 792 F.3d at 1366 ("An abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment, such as the Internet."); *Elec. Power Grp.*, 2016 WL 4073318, at *4. Here, claim 14 merely describes the abstract idea of relaying location information via an intermediary, using

15

what the specification admits to be pre-existing technologies to generate the location information. Lastly, Plaintiff's repeated assertions that the inventive concept is demonstrated by the fact that the PTO granted the claims over certain prior art, both initially and after reexamination, are irrelevant to the § 101 inquiry.

Lastly, Defendant argues that dependent claims 15 and 17, as well as the additional asserted independent claims, 16 and 19, also do not provide any inventive concept to transform the same abstract idea claimed by claim 14. (D.I. 440 at 22–24). Plaintiff argues that "dependent claims 15 and 17 recite additional non-conventional hardware—a map database. This database is not a general all-purpose database, but rather, the claims call for a specific map database, wherein the location of each mobile platform can be correlated with the map database." (D.I. 452 at 24). Plaintiff does not raise any specific arguments as to claims 16 and 19.

I conclude that these claims similarly do not add an inventive concept to the abstract idea. Asserted independent claim 16 is directed to "A computer program product comprising a computer useable medium having computer readable program code embodied therein to enable" it to perform a method that is nearly identical to the method claimed by claim 14. (*Id.* claim 16). Likewise, claim 19 is directed to "A program storage device readable by a machine, tangibly embodying a program of instructions executable by the machine" to perform a method that again closely tracks the method steps of claim 14. (*Id.* claim 19). The specification does not provide additional technical detail about the claimed "computer program product," "computer usable medium," "computer readable program code," or "program storage device." These claims are the quintessential example of implementing an abstract idea using generic computer components. It is axiomatic that the addition of a generic computer do not provide an inventive concept. *See, e.g., Elec. Power Grp.*, 2016 WL 4073318, at *5 ("Nothing in the claims, understood in light of

the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology . . . . We have repeatedly held that such invocations of computers and networks that are not even arguably inventive are insufficient to pass the test of an inventive concept in the application of an abstract idea." (internal quotation marks omitted)); *Intellectual Ventures*, 792 F.3d at 1371 ("Steps that do nothing more than spell out what it means to 'apply it on a computer' cannot confer patent-eligibility."); *Content Extraction*, 776 F.3d at 1347–48 ("For the role of a computer in a computer-implemented invention to be deemed meaningful in the context of this analysis, it must involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" (alteration in original) (quoting *Alice*, 134 S. Ct. at 2359)).

Dependent claim 15 is directed to the method of claim 14 "wherein transmitting the location of each mobile platform further comprises correlating the location of each mobile platform with a map database and transmitting a map having marked said mobile platform location(s) to said subscriber." (*Id.* claim 15). Dependent claim 17 involves "a computer program product according to claim 16," where the computer readable program code causes the computer to correlate the location of each mobile platform with a map database and to transmit a map having marked said mobile platform locations(s) to said subscriber." (*Id.* claim 17). Together, claims 15 and 17 essentially add the element of displaying the returned location on a map. Again, the patent does not purport to claim a new technology for displaying an image on a map or any sort of new application of the long-standing practice of pinpointing locations on maps. *See, e.g., Encyclopedia Brittanica, Inc. v. Dickstein Shapiro LLP*, 128 F. Supp. 3d 103, 112 (D.D.C. 2015). Accordingly, simply requiring the claimed location information to be displayed on a map when returned is not an inventive concept. I thus conclude that neither

17

independent claims 16 and 19 nor dependent claims 15 and 17 add any inventive concept sufficient to render the claims patent-eligible.

I conclude that the asserted claims of the '970 patent are directed to an abstract idea and lack an inventive concept. The asserted claims of the '970 patent are therefore invalid. Plaintiffs have failed to state a claim upon which relief can be granted. Judgment on the pleadings will be granted.

## IV.   CONCLUSION

For the reasons set forth above, the motions for judgment on the pleadings for lack of patentable subject matter in these related cases will be granted. An appropriate order will be entered.